FILED
8/19/2024
Court of Appeals
Division I
State of Washington

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ROBINETT INVESTMENT COMPANY, LLC, a Washington limited liability company; JGP INVESTMENT, LLC, a Washington limited liability company; and JEFF PETTIT, individually,<br><br>Appellants,<br><br>v.<br><br>STATE OF WASHINGTON, DEPARTMENT OF TRANSPORTATION,<br><br>Respondent. | No. 85424-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BIRK, J. — Robinett Investment Company, LLC, Jeff Pettit, and JGP Investment, LLC (collectively, "Appellants") are owners of several parcels of land nearby State Route (SR) 532. A frontage road provides access from certain of their parcels to SR 532. The State claimed the parcels were restricted to access consisting of a "Type B" approach, which would limit the parcels' access to SR 532 to farm use only. Disputing this, and hopeful of establishing a residential plat on their parcels, the Appellants filed this lawsuit seeking declaratory relief that their parcels were not burdened with access rights restrictions. The superior court granted the State's motion for summary judgment and dismissed the lawsuit. The current record lacks evidence that Type B approach restrictions burden the parcels. We therefore reverse and remand for further proceedings. However, to

the extent of the current record, no genuine issue of material fact exists on this issue and should the State be unable to produce evidence of a Type B approach restriction on remand, summary judgment must be granted in Appellants' favor.

I

A

The parcels whose access to SR 532 is at issue took their present shape from the construction of that highway bisecting the original parcels of which they were part. In 1957, the state director of highways authorized a survey for the improvement of former SR 532, and the State determined that it would be more economical to construct a new alignment than improve the existing highway. In February 1966, the Washington State Highway Commission issued a "Report on the Location and Access Features of Secondary State Highway No. 1-Y (SR 532)" for the stretch serving the lands in question. The report planned "a partially controlled limited access highway," defined as " 'a highway where the right of owner or occupants of abutting land or other persons to access, light, air, or view in connection with the highway is controlled to give preference to through traffic to a degree that, in addition to access connections with selected public roads, there may be some crossings and some private driveway connections at grade.' "

Some of the terminology used in the report was later explained at a subsequent public hearing on the new route. At the hearing, a witness from the state highway department explained that one kind of allowed "approach" was a Type B approach. The witness testified a "[T]ype-B approach" is "normally twenty feet wide and intended for normal operation of a farm." If an approach is

designated for two owners or more "it will be designated by the number of owners on the plan."[1]

A document dated March 8, 1966, is labeled "Vicinity and Total Parcel Detail Map." It showed a schematic of the route and identified the parcels along the route with numbers. The new route crossed—and therefore bisected—several parcels. The new route diagonally crossed the line between parcel 1-4515 and parcel 1-4516.[2] This left most of parcel 1-4515 and a small sliver of parcel 1-4516 on the north side of the new route and left a small sliver of parcel 1-4515 and most of parcel 1-4516 on the south side of the new route. To the east of these two parcels were four more parcels, numbered 1-4517, 1-4518, 1-4519, and 1-4520, which were bisected also.

Historically, these parcels had road access to a road to the north of where the new highway ran. A March 8, 1966 detail of a planned frontage road appended to the plaintiff's complaint[3] shows that a frontage road was planned at this location

---

[1] The treatment of another property on the route not at issue shows the highway department's understanding of a "farm" included a "tree farm." In the State Highway Commission's approval of the route, it denied in part the request of the owner of an unrelated property for a road approach, to support its operation of a gravel pit and a "tree farm." The commission ruled that "the potential frequency of traffic movements from a gravel pit operation would be detrimental to the safety of the highway users," but explained that "[t]imber may be removed over a Type B approach."

[2] Parcel 1-4515 is not labeled on the March 8, 1966 Vicinity and Total Parcel Detail Map, but there is no dispute about which parcel it is.

[3] We believe this same document was made part of the summary judgment record as exhibit D-2 to the March 13, 2023 declaration of Mara Powers. However, the exhibit to Powers's declaration is not legible either in the original clerk's papers or in the more legible set attached to appellants' brief.

on the south side of the new highway and would provide street access to the southern portions of these parcels cut off from the old road to the north.

The March 8, 1966 detail of the frontage road showed it branching from the highway at "station 276+43." The planned frontage road branched southward from the highway, and curved eastward to reach the other bisected parcels:



As explained at the public hearing, the plan sheets for the new route indicated the access control by "diagonal hashers at the point where the access rights will be restricted." Thus, for the originally planned frontage road, the access control ran along the south edge of the highway, to the indicated frontage road, south around the sliver of parcel 1-4515 south of the highway, south along the eastern edge of parcel 1-4516, and then eastward along the new northern edges of the southern portions of parcels 1-4517 and 1-4518. The March 8, 1966 detail included a "Road Approach Schedule," which listed a type "B-2" approach stationed along the frontage road noted as "FR [frontage road] 8+06 Rt [right]."

On April 6, 1966, the Washington State Highway Commission convened a public hearing on the new limited access highway at the Stanwood City Hall. The State presented the testimony of, among others, David Yates, District Access Design Engineer for the state highway department. Yates testified the proposed design included both "public road intersections" and "private approaches for certain limited or specific purposes." He explained an approach to the limited access facility would need to "serve the property . . . for which it is granted" and be safe according to design principles. Yates stated in reference to Type B approaches, if the property is "later subdivided or developed," then "some alternate means of access has to be arranged, or [a] change in the access that is satisfactory to the Highway Commission." Yates described an approach "as granted" as "limited by deed in the right of way for the specific purpose as given."

When Yates addressed the parcels at issue, he explained that the north side properties had access to the existing highway so there would be no direct approaches to the new highway, and the remainder of parcel 1-4516 on the north side of the highway did not justify an approach. In contrast, the remainder of parcel 1-4515 on the south side and the major portion of parcel 1-4516 "will have an access to the frontage road." Yates testified the Type B approach provided for Rasmus Larsen and Port Blakely Mill Company was "designated as parcel 1-4516," and was "within the limits of the access control of the frontage road intersection." Larsen was the owner of parcel 1-4515, and Port Blakely was the owner of parcel 1-4516. Yates said the State "would not allow a commercial approach within the distance of 200 feet in the same manner of protecting access

of other county road intersections." In explaining an earlier segment of the plan, Yates had explained the access control for this facility was either 200 feet from Highway 532 or 110 feet from a frontage road intersection.

Yates said the planned approach was "a type-B approach on to that frontage road." That prompted an interjection from the attorney for Port Blakely, who stated he did not understand how Port Blakely would get to the frontage road. Yates clarified they would have an approach coming from the northeast corner of the property limited to a Type B approach. Yates again explained the approach was "within the access control line." He said, "We don't list these approaches on the frontage road or elsewhere outside those limits. Any approach that is listed on any of these sheets is one planned across the access line and limited to these specific purposes for which it is designated."

At that point, Walter Hoon spoke. Hoon was the owner of parcel 1-4517, the easterly neighbor of Port Blakely's parcel 1-4516 and the next parcel served by the frontage road. Hoon had a burial vault company and a septic tank operation on parcel 1-4517, and used a truck to haul these from the property. Assistant Attorney General Bob Lundgaard then asked Yates to clarify that there was "no control of access" on other portions of the frontage road. Yates testified that "from approximately station 9, plus 50 to the east on this frontage road,"[4] there is "no

---

[4] The referenced engineer's stationing is shown on the above detail of the originally planned frontage road. The frontage road departs the main highway at its station 276+43, and at "FR 7+00." Along the frontage road, the diagonal hashers marking the access control line end approximately halfway between the second hash mark from "FR 7+00" and the hash mark labeled "10," i.e., at approximately station 9+50. It is past this point, i.e., past the diagonal hashers, where Yates indicated there is "no control of access."

control of access and driveways could be permitted so long as they met normal driveway standards, normal approach standards at any approach in that area." Lundgaard asked, "Would it be the Department's intention to limit the type of use the property could be put south of the frontage road?" Yates answered, "No."

But Yates quickly clarified it was different for the Port Blakely property. After Yates explained there was "no control of access" along the eastern portion of the frontage road, Port Blakely's attorney again interjected, "Would that apply to the Port Blakely Mill Company property also?" Yates said that would require extending the frontage road to the west to make a county road:

> The Port Blakely Mill Company will be required to use the farm-use approach, and this would require – to expand that would require working out as a public road. To make that perhaps a public road intersection would extend this frontage road to the west or something of that nature, and it would have to be something – if it became a county road, it would have to meet the design standards so far as we have designed of the full intersection which you would then have this point and its relationship to the intersection with 11.[5] There is something that could be done.

Another witness confirmed the purpose of the frontage road was to serve otherwise landlocked property.

On April 18, 1966, the Washington State Highway Commission issued its findings and order. The commission designated SR 532 as a limited access highway[6] and added a Type C and three more Type B approaches at various points.

---

[5] The reference to "11" is likely to parcel 1-4511 to the west, in the vicinity of the planned grade intersection with West Sunday Lake Road.

[6] A "limited access facility" is a highway or street especially designated for through traffic, "and over, from, or to which owners or occupants of abutting land, or other persons, have no right or easement, or only a limited right or easement of

7

On April 29, 1966, a district engineer addressed a letter to the director of highways, enclosing three revised sheets for the access plan. One of the revisions realigned the frontage road. The letter stated field investigation showed realignment was necessary "due to gradient." This had developed "since the hearing." The revision to the frontage road deleted its planned connection to SR 532, created a new connection to the east, and added a new branch to the frontage road returning back west to Port Blakely's parcel 1-4516.[7] The revision moved the access control line so that it no longer traced the parcel boundaries of the southern portions of parcel 1-4515 and parcel 1-4516, and it deleted the listed Type B approach from the road approach schedule.

On May 17, 1966, the commission issued its Supplemental Findings and Order adopting four changes to the frontage road:

1. Relocate the grade intersection for the frontage road on the right from Highway Engineer's Station 276+43.0 to Highway Engineer's Station 279+43.0.

2. Delete the Type B-2 road approach shown at FR 8+06.

3. Add the FR2 Line to provide access to Parcels 1-4515 and 1-4516.

4. Revise the limited access control for the FR2 Line.

---

access, light, air, or view by reason of the fact that their property abuts upon such limited access facility." RCW 47.52.010.

[7] Appellants appended a "MORE LEGIBLE COPY OF CP 306" to their brief, which depicts a colorized version of an exhibit in the clerk's papers. At oral argument, the parties agreed that the appended exhibit was an accurate copy of the exhibit before the superior court, so we consider it properly before us. Wash. Ct. of Appeals oral arg., Robinett Inv. Co. v. Dep't of Transp., No. 85424-1-I (May 29, 2024), at 01 min., 21 sec. to 01 min., 47 sec. and 08 min., 12 sec. to 08 min., 20 sec., https://tvw.org/video/division-1-court-of-appeals-2024051175/.

A new plan sheet showed the new frontage road diverging from the highway 300 feet to the east at station 279+43.0, the branch returning west to Port Blakely's parcel 1-4516, and a new access control line.

On May 23, 1966, the commission adopted this revised plan. The revised frontage road was planned as follows:



Consistent with the revision sheet deleting the previously listed Type B approach from parcel 1-4516 to the frontage road, the adopted revision listed no approaches on the road approach schedule. The revision still included the definitions of a Type B approach and a "No. 2" designation indicating an approach served more than one property. To the extent of our record, the May 17, 1966 supplemental findings and order indicating "Delete the Type B-2 road approach" is the last reference to a Type B restriction for the next 56 years.

The next events indicated in the record are the conveyances associated with the new highway. On November 30, 1966, Rasmus and Stella Larsen conveyed to the State "that portion" of their land, parcel 1-4515, lying between the described right of way lines for the highway. The deed also stated, "[T]he Grantors herein convey and warrant to the State of Washington all rights of ingress and egress (including all existing, future or potential easements of access, light[,] view and air) to, from and between" SR 532 "and the remainder" of their parcel.

On December 15, 1966, Julius and Charlotte Knoth conveyed to the State "[a] strip of land" described by reference to the new highway plan and to township and range, Willamette Meridian. The deed did not otherwise describe the Knoths' property, but stated, "Grantors herein convey and warrant to the State of Washington all rights of ingress and egress (including all existing, future or potential easements of access, light, view and air) to, from and between" SR 532. The State describes this as being for parcel 1-4518.

On January 6, 1967, Loyd and Elouise Evens conveyed to the State "all rights of ingress and egress (including all existing, future or potential easements of access, light, view and air) to, from and between" SR 532 and described land, which the State identifies as parcel 1-4518-A. This deed states, in addition, "Except that as a part of the consideration of this transaction, the State agrees to construct on the right of way a frontage service road along the southerly side of said highway and to which frontage service road only, the grantors, their heirs, successors or assigns reserve the right of reasonable access."

On March 15, 1967, the State filed a condemnation petition in Snohomish County Superior Court against Port Blakely and others, seeking condemnation among other properties of parcel 1-4516. Defining parcel 1-4516 as "Tract 'X'," the State sought to condemn "that part" of the tract lying between the defined lines of the SR 532 right of way "TOGETHER WITH all rights of ingress and egress, if any (including all existing, future or potential easements of access, light, view and air) to, from and between said highway and the remainder of said Tract 'X'." On September 28, 1967, the court entered its stipulated judgment and decree of appropriation. The decree described the condemned access rights in two different ways. It ordered that the State pay $450.00 "for the appropriation and use" of described lands, followed by a "to wit" clause describing that part of parcel 1-4516 lying between the described lines of the right of way "TOGETHER WITH all rights of ingress and egress, if any (including all existing, future or potential easements of access, light, view and air) to, from and between said highway and the remainder of said Tract 'X.' " The decree ordered that the State "shall be and become the owner in fee simple of the lands, real estate, premises and appurtenances and other property sought to be appropriated herein, together with the access rights, including air, view and light, of the property abutting the right of way being acquired herein from said respondents."

On October 10, 1967, Walter and Lorraine Hoon conveyed to the State "[a] strip of land" described by reference to the new highway plan and to township and range, Willamette Meridian. The deed did not otherwise describe the Hoons' property, but stated, "Grantors herein convey and warrant to the State of

11

Washington all rights of ingress and egress (including all existing, future or potential easements of access, light, view and air) to, from and between" SR 532. The State describes this as being for parcel 1-4517. This deed states, in addition: "EXCEPT that as a part of the consideration of this transaction, the State agrees to construct on the right of way a frontage service road along the southerly side of said highway and to which frontage service road only the Grantors, their heirs, successors or assigns reserve the right of reasonable access."

After establishment of the new SR 532 right of way, the new configuration of the parcels is shown by the following diagram:



The two alignments of the frontage road came to be known as 19th Avenue NW and 267th Street NW. There was never a formal transfer of the frontage road to the county. In 1974, the State transferred "Road Log" responsibilities for

maintenance of county roads to the respective counties.  On September 17, 1974, Snohomish County created a "Road Log" for 19th avenue and 267th street each as a "NEW ROAD," identifying them by an abbreviation for "County Road."  At least starting by 1992 the county maintained them as county roads.

On February 27, 2004, Port Blakely Tree Farms (LP)[8] deeded parcel 1-4516 and the "South Parcel" to Robinett, as nominee for undisclosed principals.  In 2004, Robinett conveyed the land to Pettit, at the time the owner of two neighboring parcels.  Pettit conveyed the parcels to JGP.

B

In January 2019, Pettit filed with Snohomish County an application for a rural cluster subdivision named "The Reserve at Sunday Lake," embracing parcel 1-4516, the South Parcel, and land he owned from parts of parcel 1-4517 and parcel 1-4518.  On April 18, 2019, the Department of Transportation addressed a letter to a traffic consultant concerning SR 532 and The Reserve at Sunday Lake.  The department indicated that "[d]ue to the small number of new trips added as a result of this new development," the department "will not require any mitigation actions" for SR 532.  Robinett entered into a purchase and sale agreement with Pettit's limited liability company to purchase the proposed preliminary plat.  The county granted preliminary plat approval.  The preliminary plat showed a new roadway connecting to the west end of the frontage road.

---

[8] The record does not indicate the chain of title from previous Port Blakely entities down to 2004.

On January 13, 2022, Dawn Anderson, a development services engineer with the Department of Transportation, sent an e-mail to a traffic consultant on the project. Anderson's e-mail stated she had "done some additional research on the access for this property." She said, "it [is] still showing no access." Anderson's e-mail stated, "The deeds for the other properties abutting the frontage road specifically state access to the frontage road," but "the deed for the property in question clearly states no access to any part of SR 532 including the frontage road."[9] Anderson acknowledged the county's having stated it maintains the frontage road, but this "does not negate the limited access rights or what was decreed in the court documents or deeds." Based on discrepancies in the stated acreage of the former Port Blakely properties, Anderson speculated that Port Blakely "at one time" owned "additional acreage" and "there was access to one of the County roads."[10] Having speculated there was another road access for parcel

---

[9] The record does not clearly indicate the documents Anderson's e-mail described. As noted above, the Evans deed covering what the State calls parcel 1-4518-A and the Hoon deed the State links to parcel 1-4517 both contained an exception reflecting the State's agreement to construct the frontage road and provide reasonable access to it from those parcels. All of the deeds and the condemnation decree conveyed to the State any rights of ingress and egress to SR 532. But none of the instruments before the court "state," "clearly" or otherwise, that any parcel specifically has "no access" to the frontage road. Assuming Anderson was looking at the same instruments in our record, the best sense we can make of the e-mail is that she inferred from two parcels having expressly reserved access to the frontage road that other parcels whose deeds lacked similar language lacked similar access.

[10] In response to the Appellants' motion for reconsideration of the trial court's summary judgment order, the State submitted documents it says show that in 2020 parcel 1-4516 obtained a new easement permitting access to West Sunday Lake Road across other land. The trial court did not rest its decision on such a factual determination and the record and briefing is inadequate to permit this court to do so.

1-4516 and the South Parcel, Anderson continued, "hopefully when they short platted the properties they included an easement, if they did not then they land locked the property." Anderson's speculation that "they" may have inadvertently "land locked the property" implicitly assumed that parcel 1-4516 had no access to the frontage road and SR 532. Continuing with this assumption, Anderson concluded, "It seems to me that the State would not 'forget' access for this property when they took care of it for the other properties."

The State's position that parcel 1-4516 had no access to the frontage road delayed closing on the sale for the development. At some point, the State took the position that it had acquired the properties' access rights to SR 532 in the 1967 condemnation action, so Robinett and Pettit "would have to purchase them back" to subdivide the property.

C

Appellants' filed their complaint on March 15, 2022. The complaint alleged the 1967 decree only eliminated parcel 1-4516's abutting access to SR 532 but not its non-abutting access through the frontage road.

The State answered the complaint on April 18, 2022. The State now acknowledged that the supplemental findings by the Highway Commission dated May 17, 1966 ordered the plan revised to provide access to parcel 1-4516 along the frontage road, but only "consistent with a Type B-2 use." The State alleged the decree "did not provide for such access." To the extent shown in our record, the State's April 18, 2022 pleading is the first reference to a Type B approach since the May 17, 1966 supplemental findings and order indicating "Delete the Type B-

2 road approach." The State denied that Appellants were entitled to relief, "with the exception" of a prayed for declaratory judgment finding that the 1967 stipulation and judgment "be revised" to provide access to parcel 1-4516 along the frontage road, "consistent with a Type B-2 use."

By second amended complaint, the Appellants sought declaratory relief that parcels 1-4515, 1-4516, 1-4517, 1-4518 have "unrestricted access rights" to SR 532, subject only to application for an access permit without compensation due to the State. In its November 28, 2022, answer to the second amended complaint the State prayed for declaratory judgment "finding Parcel 1-4515, 1-4516, 1-4517, and 1-4518" have "access to SR 532 from the FR and FR2 Line . . . consistent with a Type B use." To the extent of our record, this pleading is the first time the State ever asserted that parcel 1-4517 or parcel 1-4518 were limited to a Type B use. The State asked that Appellants' claims be dismissed and that if Appellants wish to "increase, modify, or change the type of existing access, or seek new access to SR 532," they be directed to comply with the State's "application and administrative process."

On February 14, 2023, the State moved for summary judgment. The State argued that in the revision to the frontage road the limited access line "was adjusted to establish Type-B access control from the frontage road at the grade intersection." For this argument, the State relied on a declaration by LeRoy Patterson, the State's highway access control and hearings manager filed the day the State moved for summary judgment. Patterson testified the revision adjusted the limited access line "to establish Type B access control from the frontage road

16

at the grade intersection." Patterson also testified that "[i]n the late 1960s and early 1970s," parcels 1-4515, 1-4516, 1-4517, and 1-4518 were "predominantly farmland."[11] Patterson also testified that "[s]ince the construction of SR 532 . . . the Washington State Highway Commission permitted Type B access for Parcel Nos. 1-4515, 1-4516, 1-4517, and 1-4518."[12] Finally, Patterson testified that the State informed Appellants "[i]n 2022" that the proposed plat had only Type B access and they "would need to purchase from the State the access rights required" to develop it.

The State described the first of eight presented issues as whether the court should "reopen or reconsider a judgment and conveyances that have been finalized for 50 years and are unambiguous," and the second as whether the Appellants were really claiming inverse condemnation because the State had "possessed and controlled property rights at issue since at least 1967." Effectively, the State argued the conveyances granted it all access rights and it had then extended only Type B access for the parcels. Any greater access would need to be purchased from the State.

---

[11] Patterson provided no basis for having personal knowledge of the uses to which the lands in question were put in the 1960s. Patterson's testimony that the parcels were "predominantly farmland" directly contradicts the statement of the owner of parcel 1-4517 at the April 6, 1966 hearing that he used his parcel for a septic tank business. It also suggests inconsistency with the statements of the owner of parcel 1-4501 that that land was being used as a gravel pit. There is no other evidence besides Patterson's unexplained statement that any land in the vicinity of the frontage road was "farmland."

[12] Patterson identified no basis for this statement, or for his knowledge that it could be true. The record reveals nothing predating the State's November 2022 pleadings in this action indicating it had ever applied a Type B restriction to parcel 1-4517 or parcel 1-4518, and Yates testified affirmatively at the April 6, 1966 hearing that parcel 1-4517 did not have such a restriction.

The Appellants submitted a declaration from Joseph Smeby, a professional engineer licensed in Washington. In Smeby's review of the April 18, 1966 and May 17, 1966 right of way maps, he concluded parcel 1-4516 had access to the frontage road and all parcels had uncontrolled access not limited to type A or B access. Smeby notes the commission's order providing for access had no access controls, no parcels are identified with restrictions of "Type A" or Type B set out, and an area of the map where cross hatching would indicate no or limited access was missing.

The superior court granted the State's motion for summary judgment and dismissed the Appellants' second amended complaint with prejudice. The superior court attached a letter decision to accompany its order. The superior court ruled that through the conveyances, the State acquired the properties and access rights between the properties and SR 532. The superior court ruled, "In 1966 and 1967, Type B access was the type of access designated as reasonable access for properties put to Farm Use" and that the parcels at issue "retained, at most, Type B access to SR 532," by way of the frontage road. Having concluded that the parcels had retained only Type B access, the superior court rejected the Appellants' claims to greater access as being at best a time-barred takings claim, a time-barred claim for additional compensation for a taking, and barred by the subsequent purchaser rule.

II

Appellants contend on appeal that their parcels have direct, uncontrolled access to the frontage road and access from the frontage road to SR 532. They

contend that this is so, because the historical record does not support that any of this access is restricted to a Type B approach. To the extent of this record, we agree.

A party seeking summary judgment bears the initial burden to show the absence of a genuine issue of material fact. Young v. Key Pharms., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989). This burden may be met by showing an absence of evidence to support the nonmoving party's burden of proof at trial. Id. at 225 n.1. Then, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact. Id. at 225. We review an order granting summary judgment de novo. Id. at 226. We view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Id.

Pursuant to the Uniform Declaratory Judgments Act (UDJA), chapter 7.24 RCW, " '[a] person interested under a deed . . . may [ask a court to determine] any question of construction . . . arising under the instrument . . . and obtain a declaration of rights . . . or other legal relations thereunder.' " Bloome v. Haverly, 154 Wn. App. 129, 140, 225 P.3d 330 (2010) (alterations in original) (quoting RCW 7.24.020). The UDJA's purpose is to " 'settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations,' " and courts should liberally construe and administer it. Id. (quoting RCW 7.24.120). "The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." CR 57; Wagers v. Goodwin, 92 Wn. App. 876, 880, 964 P.2d 1214 (1998). In general, a party challenging the action of a State agency must follow the Administrative Procedure Act, chapter

19

34.05 RCW.  See RCW 34.05.510.  The State did not assert in its appellate briefing that the Appellants' claims fall under or are limited by chapter 34.05 RCW.

A limited access highway differs from a traditional highway.  Generally, an owner of property that abuts a public street or highway has an easement of access for ingress and egress to and from such roadways.  Williams Place, LLC v. State, 187 Wn. App. 67, 84, 348 P.3d 797 (2015).  By statute, every owner of property that abuts a state highway has a right to reasonable access to that highway, unless such access has been acquired pursuant to chapter 47.52 RCW, but may not have the right of a particular means of access.  RCW 47.50.010(3)(b).  But where a new limited-access highway is established by condemnation in an area where no highway previously existed, as occurred here, no easement of access exists to the new facility.  State v. Calkins, 50 Wn.2d 716, 719, 314 P.2d 449 (1957).

This case concerns only access to SR 532 by way of the frontage road.  To the extent of our record based on the public hearing, agency orders, recorded deeds, and the decree of condemnation, none of whose content is in dispute, this appears to be a question of law which we review de novo.[13]  See Stone v. Sw. Suburban Sewer Dist., 116 Wn. App. 434, 438, 65 P.3d 1230 (2003).  Appellants have never claimed that they have a right, as abutting property owners, to enter the through lanes of SR 532 from where their land abuts the highway.  Rather, they claim only the right to access the frontage road, and from it SR 532.  They explain

_____

[13] Whether the question of the existence of any restriction on access to the frontage road is a question of fact or law appears to be an issue of first impression. We have not found and the parties have not cited any direct authority on this specific issue.

in their brief, "Plaintiffs are not attempting to connect a private drive directly to the limited-access highway. Rather, Plaintiffs intend to connect to 267th Street, which later connects to 19th Avenue, which *then* connects to SR 532 via an already-existing intersection."

The State does not seem to dispute, at this point, that Appellants enjoy access to the frontage road. In its brief on appeal, the State claims the frontage road was developed "for the purpose of funneling traffic from the abutting Parcels' driveway approaches to the Type B approach onto SR 532 located within the limited access control line." This aligns with the position it eventually took in the trial court, that parcels 1-4515 through 1-4518 have Type B access to SR 532 by way of the frontage road. The State argued it possessed and controlled the frontage road and access between the Appellants' property and SR 532 since the late 1960s. This provides the basis for the State's argument that the Appellants are untimely in attempting to regain property rights the State acquired decades ago. The necessary first step leading to this analysis, both as the State argued and the superior court ruled, is that a Type B approach was imposed on the parcels whose restraints the Appellants now seek to undo. We disagree that this record is sufficient to support the existence of restriction to a Type B approach.

The State provides little guidance on its view of how an access restriction such as the asserted Type B approach restriction is established. But it offers some. When it answered the second amended complaint, the State asserted a counterclaim alleging that to "increase, modify, or change the type of existing access" of the parcels, the Appellants are "required to submit an application and

21

comply with the policy procedures and rules set forth in the Washington State Department of Transportation Design Manual," among other things. At oral argument, when asked to identify the point at which the State imposed an access restriction here, the State referred to the public hearing calling it the "limited access hearing."[14] The State described the testimony as "part of the administrative record," and argued "the findings and orders were not appealed" and are "presumed valid."[15] The State therefore seems to say that an agency action was required for the government to limit the Appellants' land to farm use, and points to the 1960s proceedings described above. This is consistent with a regulation making it clear agency action is authorized to modify an approach: "Once established, the type, size and location of the approach may be modified by the secretary of transportation or his designee." WAC 468-58-100(1)(c).

When did the State impose the asserted Type B restriction? At oral argument, the State cited two sections of Yates's testimony for the proposition that the State assigned an access right to any of the parcels.[16] These record citations fail to support that proposition. At those parts of the hearing, Yates merely described in general the way limited access highways work and defined Type A and Type B approaches. Otherwise, Yates testified that parcels 1-4515 and 1-4516 had a Type B access restriction, but that was under the old design of the

---

[14] Wash. Ct. of Appeals oral argument, <u>supra</u> at 15 min., 05 sec. to 15 min., 25 sec.

[15] Wash. Ct. of Appeals oral arg., <u>supra</u> at 15 min., 54 sec. to 16 min., 26 sec.

[16] Wash. Ct. of Appeals oral arg., <u>supra</u> at 14 min., 55 sec. to 15 min., 54 sec.

frontage road that was never adopted. Yates never testified and no document at any point indicated a Type B restriction applied to parcel 1-4518, and Yates affirmatively testified that parcel 1-4517 had no use restriction.

Even if the public hearing had supported the existence of a Type B restriction, the plan for the frontage road presented at the hearing was scrapped less than four weeks later based on field conditions. In its last order before this court, the commission adopted four changes to the frontage road, including a deletion of the Type B road approach and adding $FR_2$ to provide access to parcels 1-4515 and 1-4516. The commission adopted the revised plan. The revision sheet supports this conclusion. The colorized copy of this exhibit depicts the initial plan to have the frontage road run south from SR 532 adjacent to parcels 1-4516 and 1-4517. The revised, and ultimately finalized plan, saw that change, with that south-running line marked for deletion by the two green X's. The box labeled "Road Approach Schedule" also has a green line crossed through one line of its contents, signifying deletion. The new and adopted frontage road shows the connection to SR 532 shift east with a fork road connecting the state highway with an access road for the parcels.

The commission's supplemental findings and order is consistent with the testimony at the 1966 public hearing. Yates testified it was not the department's intention to limit the type of use of property south of the frontage road outside the access control line. For parcel 1-4517, Yates testified that there would be no control of access on the portion of the frontage road servicing the vault and septic company or use restriction on the property itself. The new frontage road alignment

23

eliminated the access restriction hash marks that had previously burdened parcels 1-4515 and 1-4516.  Under the new design, they had access to the frontage road without crossing the access control line, and as Yates explained at the hearing that meant there was no need for an approach of a specified type and no use restriction on the parcels.  There are other consistencies: Yates explained that an approach serving more than one property would be labeled with the number of properties served, and here the original Type B approach serving two properties was deleted but it was never replaced with a Type B approach purporting to serve and therefore restrict four or more properties as the State has argued.  Yates also testified that the access control for this project ran to 110 feet from a frontage road intersection, so moving the intersection 300 feet to the east and running the road back to parcels 1-4515 and 1-4516 would suggest that they now would be outside the access control line as parcel 1-4517 was originally, and therefore like that parcel have no use restriction.

For purposes of the summary judgment standard, the 1966 revision order deleting the Type B approach with no further action supports that no Type B restriction applied, but in addition the evidence relied on by the State fails to support any agency action imposing a use restriction.  In his 2022 declaration, Patterson stated the right of way plan adopted by the commission included adjusting the limited access line "to establish type B access control from the frontage road at the grade intersection."  But on that point, the order stated only "[d]elete the Type B-2 road approach" and "[r]evise the limited access control for the FR2 line."  Other than the superseded original plan that was never executed,

24

nowhere does the order or any other document before the court impose any Type B access restrictions. Patterson cites no documents or other agency action during the last six decades to support his statements. In the absence of any agency action limiting parcels 1-4515, 1-4516, 1-4517, and 1-4518 to Type B access to the frontage road, no such restriction exists.

Because the parcels have unrestricted access to the frontage road, and from it to SR 532 at the intersection built for that purpose, there is no need to interpret the condemnation decree as to parcel 1-4516 or the deeds conveying parts of parcels 1-4515, 1-4517, and 1-4518. Clearly, the parcels do not enjoy access to the through lanes of SR 532 directly from their abutting property lines, as that would cross the access control line and is prohibited without an established approach. But they do not have need of such approaches, because, to the extent of this record, they have direct, unrestricted access, without crossing the access control line, to the frontage road and from there to SR 532.

This conclusion requires that we reverse summary judgment. Once the superior court concluded that the parcels retained at most Type B access to SR 532, it would follow that the action sought to regain property rights long ago ceded to the State. But in the absence of an existing restriction against the parcels to a Type B approach, the action seeks merely to establish that fact against the State's maintaining otherwise, and does not seek to reclaim any property right the Appellants do not currently already enjoy. It is therefore unnecessary to reach any

other issues raised by the parties.[17]   Moreover, we further conclude that the present record is insufficient to establish a restriction against the parcels to a Type B approach.  Thus, in the absence of other evidence, on the record currently before this court the Appellants would be entitled on remand to declaratory relief that there is no restriction against their parcels to a Type B approach.

We reverse and remand for proceedings consistent with this opinion.

_Birk, J._

WE CONCUR:

_Coburn, J._          _Hazelrigg, ACJ_

---

[17] The issues we need not reach include, among others, any of the State's contentions that would follow from a conclusion the Appellants were seeking to reclaim a formerly ceded property right, Appellants' claim to "reasonable" access to SR 532 under RCW 47.50.010(3)(b), or the rights of the South Parcel to SR 532 or to a claimed 1928 public easement, in light of its continued common ownership with parcel 1-4516 whose access rights are not at this time shown to be restricted.